## HOOD *v.* THE STATE.

1. Inasmuch as it did not clearly appear by the showing for a continuance that more than one of the absent witnesses resided out of the county, and what that witness would testify being fully admitted by the State, there was no error, under sections 3847, 3848 of the code, in denying a continuance.

2. There being no evidence that the deceased sent any message by his brother to the accused requesting the accused to meet him (the deceased) at a certain bridge, the fact of the oral delivery of what purported to be such a message was immaterial, and the exclusion of evidence on that subject is not cause for a new trial.

3. The exclusion of what was said by the prisoner's child on reaching a neighboring house whither she had been sent by her father, cannot be held erroneous, it not appearing what the child's declarations were. If they were a part of the *res gestæ* at all, it would be on the ground that they were explanatory of some relevant act, and whether they had this character or not is unknown.

4. The sentence of the court, with reference to the term of punishment, cannot be looked to as a ground for a new trial.

5. In view of the presumption of law that a voluntary homicide by the use of a deadly weapon is felonious unless shown to be justifiable, the evidence warranted the verdict, and there was no error in denying a new trial.                    *Judgment affirmed.*
   October 9, 1893.

Indictment for murder. Before Judge HARRIS. Fayette superior court. March term, 1893.

1. The motion for a new trial complains that the court erred in refusing to continue the case on the showing made by the defendant. The killing occurred in December, 1892. The indictment was found at the next March term. The case was called for trial about ten o'clock on March 23d, and the defendant moved that the case be continued on account of the absence of various witnesses, stating what he expected to prove by them; that they lived in Fayette and Coweta counties; that he did not make the motion for the purpose of delay, but to get these witnesses to testify in his behalf, and expected to get them at the next term of court; and that he had had no time to consult with his lawyers as to the line of his defence since they were appointed, and could not go safely to trial without further preparation. He further stated, that when he was first arrested he employed Clark, an attorney of Newnan, to defend him, and depended on him to have his witnesses subpœnaed; that Clark left, and defendant did not know where he

went to; that he then tried to get other attorneys, who would do nothing until he could get their fee fixed, which he could not do; that he made other efforts to get his witnesses summoned, etc. His counsel stated, that having just been appointed to defend him, and not having seen his witnesses nor had time to talk to him about his case, they were wholly unprepared to go to trial and give him justice in his defence on so short notice. The court ordered the sheriff to get subpœnas for the witnesses and serve them, and passed the case until the next morning. On March 24th, the case was again called at ten o'clock, and the defendant's counsel asked to amend their motion for continuance. The defendant was sworn and gave the names of other absent witnesses whom he expected to get by the next term of court. He stated: " Henry Page lived on Hunnicutt's place in Fayette county; they tell me he lives in Carrollton ; expect to prove by him that he was next to the first man that came to my house after this took place ; that he saw Mr. Watts [the deceased] lying there and pistol with him, and the pistol was lying by his side. Ellen Page is wife of Henry Page; expect to prove by her that she heard the three shots made, that there was two shots made right together, and then in about twenty-five or thirty minutes the last was made, that she was about 500 yards from the place. . . The Pages and Mr. Morrow, Gale's brother, live in Coweta county. Why I did not give these names yesterday was, I could not remember them. After I went back to jail I went to where I put the names. I gave these names to Mr. Golightly, lawyer, yesterday before twelve o'clock; he came over to jail after I went back and got the names. . . Mr. Morrow lives at Mr. Pat Carmichael's place, just about a mile from where Mr. Watts lived, in Coweta county. . . Mr. Martin and Jerry Morgan, last of my account, lived in Coweta county; after I went to Fulton jail, do

not know whether they moved or not. Henry Page and Ellen Page live in Carroll county. Henry Page saw the pistol. . . Expect to prove by Ellen Page and Milly Reaves that they heard the reports from three shots, and that they were about 500 yards from me. I expect to prove by Henry Page, Ellen Page, Milly Reaves, Mattie Martin and Jane Bailey that they heard the three shots. . . I suppose all here will testify to the same, to wit, Jane Bailey, Jane Reed, Tilman Sims, and Joe's wife, if she is here. . . Dick Bridges lives in Senoia; expect to prove by him that he heard these parties at Mr. Watts' gin-house making up their plans to come and kill me. . . No other witness here that I can prove the same thing by that I can prove by Dick Bridges. Henry Page was the first man that got to Mr. Watts, and no other witness here that I can prove by that there was a pistol by Mr. Watts. . . What reason I have to believe Dick Bridges will swear about the plot, I have reason to believe he will swear the truth about it. The day I left Senoia to go to Fulton jail he told me I had enemies talking about me." It further appeared, that on the previous day defendant's counsel had gone to the jail to talk with him; asked him about his witnesses and got the names of those just mentioned by the defendant; was let out of jail about three o'clock, and immediately gave the sheriff subpœnas for the witnesses and asked him to have them brought. The court stated that, as he understood the showing, all the witnesses called on the previous day were present except Morgan and Morrow; that by Morrow the defendant desired to prove that a pistol was found by Watts after he was killed, and by Morgan that Watts told him his brother wanted to see him at the creek next morning, and he declined to go. The solicitor-general admitted that Watts' pistol was so found.

2. Error is assigned because the court refused to

allow the defendant to prove by Jerry Morgan and two
others, that on Sunday before the killing of Watts on.
Monday, they were at the house of defendant, and Bud
Watts, brother of deceased, went there and told defend-
ant that deceased had sent him to tell defendant to meet
deceased and Bud Watts the next day at the creek
bridge, where they would have some whisky; that de-
fendant told Watts he would go or send his boy; and
Watts remarked, not to send the boy, he wanted de-
fendant to go in person.   The defendant first offered to
prove this by Reed, a witness for the State, on cross-
examination and before the State rested its case.   The
court held that the defendant could not make such proof
unless it could first be shown that Bud Watts was the
agent of the deceased, and refused to allow the defend-
ant to ask Reed such questions.   Reed was not put upon
the stand again, nor was he offered by the defence, nor
did the court at any time after this mention to defend-
ant that he could make such proof by Reed, but did
afterwards allow Gay, a witness for defendant, to testify
to the conversation in question.   Defendant also men-
tioned such a conversation in his statement.   After he
closed, the State offered Bud Watts in rebuttal, and he
denied any such conversation, this being the first denial
offered by the State.   After the State had again closed,
the defendant offered in surrebuttal John Morrow and
others for the purpose of proving that such a conversa-
tion occurred on Sunday, and that Bud Watts did tell
the defendant to meet him and deceased at the creek
the next day.   The court held that such testimony was
not then admissible.

3. While Jane Morgan was on the stand she testified
that the defendant's little girl came to the house of Reed
running and crying, and that Reed's house was in hol-
lowing distance of the defendant's.   His counsel pro-
posed to ask her what the child said when she first

reached the house of Reed. The court held that she could state that the child told Reed that defendant sent for him, but that any other words spoken by the child at the time were inadmissible. This ruling is assigned as error.

4. It is alleged, as a ground for a new trial, that the sentence imposed by the court was cruel and unusual, the same being imprisonment in the penitentiary for twenty years.

5. The jury found the defendant guilty of voluntary manslaughter. The motion for new trial alleges that the verdict is contrary to law and evidence. It appears that defendant shot Watts in the leg with a gun loaded with buckshot, and struck him on the head with the gun. Defendant was a tenant of Watts, and the killing occurred at the house occupied by defendant, his wife being the only third person present. He claimed that he did the killing in self-defence, Watts having already, without provocation, fired at him twice with a pistol and being in the act of beating him with it when he seized his gun and struck Watts over the head, knocking him down, and that as Watts was rising and attempting to shoot at him again with the pistol, he fired the gun at Watts's legs, etc. There was testimony that the gun was soon afterwards found broken, in its place over the door, and that only one chamber of the pistol (which was found directly under the body of Watts) was empty. His wife testified that it was loaded two days before this, and that she fired off one shot from it and placed it on the dresser. She saw it lying there on the morning of the day of the killing, but did not know how many loads it had. In the previous month a disagreement had arisen between the parties touching a settlement between them. Defendant carried off cotton, and deceased caused it to be levied on; and there was testimony on both sides tending to prove threats by them to kill each other.

J. F. GOLIGHTLY, E. F. WEEMS and J. W. WISE, for plaintiff in error. T. A. ATKINSON, solicitor-general, and J. W. SHELL, by ATKINSON & HALL, *contra*.